1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

9 | NICHOLAS BARNARD,

NO.

10 |            Plaintiff,

**COMPLAINT FOR VIOLATIONS OF 15 U.S.C. § 1692 ET SEQ. AND RCW CHAPTERS 19.16 AND 19.86 ET SEQ.**

11 |     vs.

12 | COLUMBIA DEBT RECOVERY, LLC dba GENESIS CREDIT

13 | MANAGEMENT, LLC

14 |           Defendant.

15

16       COME NOW Plaintiff, Nicholas Barnard, by and through counsel, who alleges:

17                    **I.**      **PARTIES AND JURISDICTION**

18      1.     Plaintiff Nicholas Barnard is an individual who resides in Washington State.

19      2.     Defendant COLUMBIA DEBT RECOVERY, LLC dba GENESIS CREDIT

20 MANAGEMENT, LLC ("CDR"), a Washington Limited Liability Company, UBI #604-074-

21 740, is a debt collector and collection agency doing business in Washington, and who repeatedly

22 attempted to collect an alleged debt from the Plaintiff. CDR's registered agent is Rowland

23 Avenue Management, 906 SE Everett Mall Way Suite 301, Everett, WA 98208-3744.

Complaint - 1

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

1      3.      Jurisdiction over Defendant is proper as Defendant is doing business in

2  Washington State and venue is appropriate in King County, Washington.

3                              **II.      FACTS**

4      4.      In March 2015, Plaintiff Nicholas Barnard rented an apartment from Clocktower

5  Apartment Homes ("Clocktower") at 13725 32nd Ave. NE, Seattle, WA, 95125.

6      5.      In 2017, Mr. Barnard signed a new fixed-term lease agreement, which terminated

7  at the end of March 2018.

8      6.      In January 2018, Mr. Barnard was having financial difficulties, which made

9  continued payment of rent at Clocktower impracticable. Additionally, Clocktower management

10 had engaged in excessive entry into his apartment for several months, which made his living

11 situation extremely uncomfortable.

12     7.      He did the most responsible thing that he could do in his situation and gave

13 Clocktower notice that his last day would be February 1, 2018. He provided notice by letter on

14 or about January 29, 2018. A true and correct copy of his notice is attached as **Exhibit A**.

15     8.      Mr. Barnard knew that he might owe money for moving out early, but he had no

16 choice due to his uncertain financial status. To give Clocktower the opportunity to rent the unit

17 to others, Mr. Barnard moved out early.

18     9.      He estimated that the fallout may consist of two months' rent, and perhaps some

19 utility charges minus his deposit.

20     10.     However, shortly after moving out, he received a huge shock when Clocktower

21 sent him a final account statement. A true and correct copy of the statement is attached as

22 **Exhibit B**.

23     11.     The most glaring issue with the final account statement was that Clocktower was

Complaint - 2

1  assessing a $1,385.00 "insufficient 20-day notice" fee, when Mr. Barnard had given Clocktower

2  over two months' notice.  The document itself accounted for this advanced notice.

3      12.    Mr. Barnard also took issue with the $1,343.85 in cleaning fees, carpet

4  replacement, and damage repair as he had cleaned the apartment before he left.  Additionally, he

5  had lived there for nearly three years, and nothing was damaged beyond normal wear and tear

6  upon moving out.

7      13.    Just a few months after Mr. Barnard moved out of the apartment, he began

8  receiving communications from CDR.  A true and correct copy of a letter he received from CDR

9  in 2018 is attached as **Exhibit C**.  He was not in a financial position to resolve any outstanding

10  issues with the apartment or CDR, especially when the balance was inflated by over $2,700, so

11  he asked CDR to stop contacting him.

12      14.    CDR continued to send letters and e-mails.  On or about March 4, 2020, Mr.

13  Barnard received an e-mail from CDR with an attached letter.  A true and correct copy of the e-

14  mail and its attachment are attached as **Exhibit D**.

15      15.    In March 4, 2020 letter, CDR stated that Mr. Barnard owed $5,636.85 in

16  principal, and $1,414.00 in interest, for a total due of $7,050.85.

17      16.    Just twelve days later on March 16, 2020, CDR sent Mr. Barnard another

18  collection letter, and stated that Mr. Barnard owed $5,636.85 in principal, and $1,406.59 in

19  interest, for a total due of $7,043.44.  A true and correct copy of the e-mail and its attachment are

20  attached as **Exhibit E**.

21      17.    Mr. Barnard was extremely confused, as the amount of interest (having been

22  already calculated on dollar amounts which he did not owe) was decreasing, and he knew that

23  the balance was inflated by fees and costs that were obviously inaccurate.  Logically speaking,

Complaint - 3

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

1    even assuming the principal amount was correct, at least one of the figures for interest is

2    necessarily false (if not both).

3          18.     On March 26, 2020, Mr. Barnard called CDR to start a dialogue about the

4    confusing nature of CDR's collections, and hopefully fix and resolve the issue.  Unfortunately,

5    Mr. Barnard left the call more confused than when he began.

6          19.     First, Mr. Barnard told CDR that he could not owe the $1,385 twenty-day notice

7    fee, because he gave over two months' notice.  CDR's representative's response was to tell Mr.

8    Barnard that he should have just paid the remaining two months of rent when he left, because it

9    "would have been a lot cheaper."

10         20.     The attempted collection of a fee for supposed failure to give notice is obviously

11   uncollectable on its face, and CDR ignored Mr. Barnard's simple explanation.

12         21.     Second, Mr. Barnard asked CDR how he could be charged for cleaning fees,

13   when he had cleaned the apartment before he left.

14         22.     Bizarrely, CDR falsely stated to Mr. Barnard that if he did not have the apartment

15   professionally cleaned, then he would have to pay Clocktower for such cleaning.  No such

16   provision existed.

17         23.     Finally, Mr. Barnard asked CDR about the fluctuating amount of interest.

18         24.     CDR's representative offered to give Mr. Barnard a new number, which would

19   "probably be more accurate."  Despite only ten days passing since CDR's last letter, CDR's

20   representative stated that Mr. Barnard owed an additional $48.15 in interest, for a total of

21   $1,454.74.  The representative offered absolutely no explanation for the fluctuating amount of

22   interest.

23         25.     In fact, four days after Mr. Barnard's call to CDR, on March 30, 2020, he

Complaint - 4

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

received another e-mail from CDR, which again claimed that Mr. Barnard owed $1,046.59 in interest. A true and correct copy of the e-mail is attached as **Exhibit F**.

26.     Then, in almost comic fashion, on April 13, 2020, CDR sent yet another e-mail with the same amount of interest ($1,046.59) allegedly owing. A true and correct copy of the e-mail is attached as **Exhibit G**.

27.     As a result of CDR's actions detailed above, Plaintiff has incurred expenses in seeking and retaining counsel in connection with ascertaining his legal rights and responsibilities, on information and belief, has suffered damaged credit, and has suffered financial uncertainty, unease, and distress caused by the false, improper, and confusing nature of the collection efforts.

28.     Additionally, Mr. Barnard is self-employed, and had to take time away from his business to deal with CDR's collection efforts.

### III.   CAUSES OF ACTION

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

29.     With respect to the alleged debt, Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3) and Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6).

30.     With respect to the alleged debt, Plaintiff is a "debtor" as defined by RCW 19.16.100(7) and Defendant is a collection agency as defined by RCW 19.16.100(4).

31.     For claims arising under the Fair Debt Collection Practices Act, such claims are assessed using the "least sophisticated debtor" standard. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

### Count 1 (and all subcounts)

32.     A debt collector may not use any false, deceptive, or misleading representation or

Complaint - 5

means in connection with the collection of any debt.  15 U.S.C. § 1692e.  This includes the false representation of the character, amount, or legal status of a debt (§ 1692e(2)), the threat to take any action which cannot be legally taken (§ 1692e(5)); or the use of any false representation or deceptive means to collect or attempt to collect a debt (§ 1692e(10)).

33.     Defendant used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when it:

    a)  Sent numerous letters demanding amounts not owed (notice fees, cleaning fees, and interest calculated on those fees);

    b)  Represented on a phone call that Mr. Barnard owed money which was not owed;

    c)  Misrepresented the amount of interest owed in numerous letters;

    d)  Sent letters and/or e-mails to Plaintiff which were confusing, misleading, and incorrect;

    e)  Falsely stated that Mr. Barnard would have to pay for cleaning because he "did not hire a professional" to clean the apartment.

34.     Therefore, Defendant violated 15 U.S.C. § 1692e, and/or its subsections, on numerous occasions.

## Count 2 (and all subcounts)

35.     A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

36.     Plaintiff realleges paragraph 33 *supra*, as constituting unfair and unconscionable means to collect a debt.

37.     In summary, the Defendant therefore violated 15 U.S.C. § 1692f and/or §

Complaint - 6

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

1  1692f(1) on at least eight (8) occasions.

2              **GENERAL ALLEGATIONS APPLICABLE TO ALL CPA CLAIMS**

3         38.      Violations of RCW 19.16.250 are per se violations of the Consumer Protection

4  Act ("CPA"), RCW chapter 19.86.[1]  *See* RCW 19.16.440.  RCW 19.86.090 provides for treble

5  damages (to a limit of $25,000) and attorney's fees.

6         39.      Because RCW Chapter 19.16 is enforced through RCW 19.86 *et seq.*, the below

7  counts alleging violations of RCW Chapter 19.16 are therefore CPA violations.

8         40.      Even minimal or nominal damages constitute "injury" under the CPA.  *Panag*,

9  166 Wn.2d at 57.  A plaintiff need not prove any monetary damages at all, as even

10  "unquantifiable damages" suffice to establish "injury" for purposes of the CPA.  *Id.* (citing

11  *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987)).

12                                    **Count 3**

13        41.      RCW 19.16.250(21) prohibits the collection, or attempted collection, of any

14  amounts in addition to the principal of a claim other than allowable interest, collection costs, or

15  handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable

16  court costs.

17        42.      Here, Defendant demanded money on numerous occasions for amounts that were

18  not owed through letters, e-mails, and phone calls.  This included charges that could not be owed

19  under any circumstance, such as a twenty-day notice fee (when Plaintiff gave notice) and

20  cleaning and repair fees.

21        43.      Each attempt to collect money from Plaintiff constitutes a separate attempt

22

23  [1] *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009) ("Consumer debt collection is a highly
regulated field.  When a violation of debt collection regulations occurs, it constitutes a per se violation of
the CPA…").

Complaint - 7

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

1   amounts obviously not owed.

2       44.     Defendant therefore violated RCW 19.16.250(21) upon each debt collection

3   attempt.

4                                   **Count 4**

5       45.     A collection agency shall not represent or imply that an existing obligation may be

6   increased by the addition of any charges when in fact such charges may not be legally added to the

7   obligation.  RCW 19.16.250(15).

8       46.     Here, CDR calculated interest on a principal that was obviously inflated and

9   demanded that Plaintiff pay that interest on that inflated principal.

10      47.     Additionally, CDR attempted to collect a confusing, fluctuating amount of interest.

11      48.     Defendants therefore violated RCW 19.16.250(15) on numerous occasions.

12                              **Count 5 – Injunctive Relief**

13      49.     A plaintiff may seek injunctive relief for violations of the Consumer Protection

14  Act.  RCW 19.86.090.

15      50.     Plaintiff does seek injunctive relief from this Court which would enjoin

16  Defendants from collecting debts in the manner described above from Plaintiff and any other

17  person similarly situated.  *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007).

18      51.     Specifically, Plaintiff seeks an injunction prohibiting Defendant from its unlawful

19  collection tactics, including but not limited to demanding money that is not owed, and assessing

20  interest that is not owed.

21      52.     Plaintiff has reason to believe these actions may constitute a pattern and practice

22  of behavior and have impacted other individuals similarly situated.

23      53.     Injunctive relief is necessary to prevent further injury to Plaintiff and to the

Complaint - 8

Washington public as a whole.

54.     Injunctive relief should therefore issue as described herein.

## IV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.     For Judgment against Defendants for actual damages.

2.     For statutory damages of $1,000.00, for FDCPA violations.

3.     For statutory damages of $2,000.00 per violation, for Washington Collection Agency Act and Consumer Protection Act violations.

4.     For treble damages, pursuant to RCW 19.86.090, calculated from the damages determined by the court.

5.     For costs and reasonable attorney's fees as determined by the Court pursuant to 15 U.S.C. 1692k(a)(3).

6.     For injunctive relief pursuant to RCW 19.86.090 as described above.

Respectfully submitted this 24th day of April, 2020.

ANDERSON SANTIAGO, PLLC

By:
T. Tyler Santiago, WSBA No. 46004
Jason D. Anderson, WSBA No. 38014
Attorneys for Plaintiff
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)

Complaint - 9

ANDERSON | SANTIAGO
787 MAYNARD AVE S.
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719